11-3178, Bank of America v. Laurance H. Freed and DDL LLC. When the attorneys, when the case is called for the attorneys to approach, if the students need to leave, feel free to leave. You're welcome to stay, but if you need to leave to make your ten o'clock class, you are quite free to leave and don't worry about it. Meanwhile, we'll wait for everybody else to get a little quiet so we can hear your arguments, counsels. And I'll change my paper. Good morning, Your Honor. John Anderson. Wait a minute. Wait for the people to leave. Oh. I was hoping they would stay, Your Honor. You really have an audience. I'm sure the arguments will be rifting in spite of the lack of an audience. They have cleared out. Generally, the only people here that will listen to these are people who get paid to listen to them. That's a shame. Not a lot of volunteers. All right. So we just called Bank of America v. Freed and DDL for the appellant. Excuse me. Louis Bernstein on behalf of the appellants and on behalf of Bank of America. John Anderson, Your Honor. Okay, Mr. Anderson. This case appears before us again, and we're familiar. I can assure you that we've read the pertinent portions of the record and the briefs. It's a fascinating issue, frankly, about receivers. But we have a 15-minute rule per side in this division, but we don't enforce it as long as it's interesting and not repetitive, not cumulative, as we would say from the last case. So anytime you're ready, Mr. Bernstein. Good morning. Good morning. The issue before Your Honors today is actually quite simple, and I'm going to take the lead with the sanction. The sanction in this case for indirect civil contempt was the appointment of a receiver. That receiver was then ordered to conduct an investigation, report back to the court, and liquidate all of the Freed and DDL assets. Under the citation statute, the court had the power to do this, didn't they? I'm sorry, say it again. Under the statutes regarding the citation for discovery of assets, which is very broad, didn't the court have the authority to appoint a receiver? The court, under the proper circumstances, does have the right under 214.02 and Section 718 to appoint a receiver if one is requested under those statutes. That is not what occurred. And I would also point out, Your Honor, that under 214.02 and 718, a receiver may be appointed if requested, and then there has to be a response and then a hearing on that issue, and then that receiver must hold assets. That is the very basis of what a receiver does. The receiver must hold assets? Yes, Your Honor. Okay. And that's not what the order provides for. So one, they didn't ask for it. Two, a receiver has to hold the assets. That is not what that order provides for. So we now have a scenario, and I know I heard Your Honor ask the prior counsel in the case. There is not one case in Illinois, and there is not one case in the United States, which provides that as a sanction for indirect civil contempt,  It's never happened before. And, in fact, how do we know that's true? Well, opposing counsel didn't cite one case. And they can't because it doesn't exist. And, in fact, the very order that drives the contempt order from the underlying court specifically supports our position. The lower court cited Jackson and Vienna Baking in support of its position that it can appoint a receiver for indirect civil contempt. However, if one takes a look at the Jackson case, one, it has nothing to do with contempt. It doesn't mention contempt. Now, that's number one. Number two, the order provides, or the case provides, that you cannot appoint a receiver for past conduct. It's very specific. It's prohibited. Number three, that case does not provide anything with contempt. It does not provide anything for a receiver. And, in fact, that case itself overturned the appointment of a receiver. So we have three different scenarios from the very case cited by the court in support of its position. One, can't have a receiver for past conduct. Two, it overturned the very bearing of that. And it has nothing to do with contempt. If one then goes back and reads the Vienna Baking case, which was cited by Jackson, that's identical. So the very case and two cases that are provided for in the court's order support us. So there is no basis for the entry of this order. And there's a good reason for that, because all the cases in Illinois require that the contempturer have the keys to his own cell. He must be. I'm going to go back to the purge provision. Let me just take a step back. You are not appealing the appointment of a receiver for the identified LCCs. Is that right? Not in this order, Your Honor. There is another appeal dealing with the 3020 receivers. We do not disagree that a receiver can be appointed for the 69 LLCs. Now, when you say 69, when it first came before us in late fall, it was decidedly less than 69, was it not? Maybe 52 or something rings a bell with me. I'm unaware of that, Your Honor. I know there were two separate orders in this case. One, I believe, was 43, and then there was an additional 26. So two separate orders totaling 69. Well, it would be 33 and 36, I guess, but that's just math. So what is the difference between the authority given to the LLC receivers and what you call the contempt receiver? Well, the 3020 receiver is permitted by statute. We don't disagree with that. The 3020 receiver is permitted under the statute to collect and monitor distributions out of those LLCs. And we don't disagree with that at all. And, in fact, that actually supports our position in this case. If the underlying court entered an order to make sure nothing happens to those assets, again, that would be for past conduct, which would be improper on its face. They had, at the time this order was entered, a charging order against all 69 LLCs. A receiver had been appointed for all 69 LLCs. And, also, they had foreclosed on all of them. All of the known assets had been covered, protected, and foreclosed upon with a receiver appointed. They were covered. So when they entered this contempt receiver, there's no basis in the law for it. There's nowhere for this receiver to go. So there's nothing for him to do. And anything he is doing since the entry of that order is improper. Because, again, we're giving a third party the ability to determine when Freed and DDL can purge their contempt. On its very face, it flies in the face of all reported cases in the United States. It's never happened before. So we think as far as that goes, Your Honor, the sanction on its face must be reversed. So we take the lead on that because we think that's the most glaring and easiest for anyone to ascertain. When we take a look at the underlying contempt issues, it's actually very simple. It's not as complicated as the other side would like you to believe. They're broken down into three categories. One, which we acknowledge, there was a Deutsche Bank fund. It was improperly liquidated because it had been processed prior to the entry of the citation, liquidated subsequent to that, and we advised the court below that we were wrong. We then step to an entity called DDL-SE. Now, it's a bank account. By its very name, DDL-SE stands for DDL Small Entities. The only testimony at all regarding that account was that it belonged to various entities, not to DDL. It was grouped in a DDL-SE account because it was there to save money. We then have, which is the largest component of this case on the contempt. As to that last one, did the free DDL raise that issue in the lower court in terms of a motion saying, we want a hearing to show you that this is either exempt money or these assets are exempt? We didn't file a motion. There was testimony given by Ms. Walters, I think, and Ms. Bazan, testifying that it did not belong to DDL. Okay. In addition, Your Honor, we have the booking entries, and that's how the bank likes to say there was $5 million of dissipated assets. One, the booking entries comprise approximately $3 million. However, the bank also acknowledges that there's double counting there. So we really don't know the amount. The interesting thing about this case and those booking entries is that it is not the fact that $3 million all of a sudden left these underlying entities and found its way over in the Cayman Islands. That's not what happened. So when we talk about a dissipation of assets, we have entities which lent money to other entities, entities not covered by the citation, entities, I might add, that were kept alive by the lending of money back and forth between these entities. Who is the only party that really benefits from that? Bank of America benefits from that. Why? They had a charging order and a foreclosure order on 69 LLCs. That money was lent back and forth between the different entities to keep those entities alive. It was coded as a distribution. It had previously been coded prior to 1999 as loans. Again, we're not really here for that, are we? Are we here really to decide whether or not the coding was correct and all of that? I tend to agree with you. As Blue Brief points out, what difference would it make? Not to say I'm for concessions. That as a Deutsche Bank, there was a problem and your client was wrong. The question here is, as you say, is the contempt receiver. And I don't see how. What you just argued, before I cut you off, has lots to do with the appointment of the contempt receiver. What does it have to do with it? Well, the court made a very generic ruling in saying because of these basically dissipation of assets, we are appointing. Right. And so our argument, Your Honor, is while we acknowledge there was a 245 Deutsche Bank, the other allegations concerning dissipation of assets are unfounded. There was no dissipation of assets. Other than the 245, the rest of them were not. And the only benefit received was by the Bank of America. You say that there was no dissipation. Of course, your opponents argue something else. Tell me why there wasn't dissipation, other than the 245. Well, the DDLSA wasn't DDL's money. It belonged to a series of other entities grouped into an SE account. As far as the booking entries, Your Honor, those were money that was lent, an example, from Freed Red Sky to Freed 4300. Lewis Bernstein. Mr. Bernstein, these are sophisticated business people. When you get a citation to discover assets, if you have the assets of subsidiary corporations bundled in with the assets of the corporate entity to whom the citation is directed, what is the issue of the citation to do? Is it their job to parse out which funds belong to who? I mean, isn't that your job? I agree, Your Honor. It is our job. And in further support, though, DDL is a holding company. DDL receives profits if the underlying entities have profits. As Your Honors may be aware, many of the assets comprised in the underlying 69 LLCs are underwater, have been sold. There are no profits. At the end of the year, the accountants will go through that and see if there is a profit. Distribution under the LLC Act is a defined term. It isn't just any money in the underlying LLC automatically becomes DDLs. That's not the way it works. So it has to be a profit. It has to rise to the top. If our client had, instead of calling it and booked it, a distribution, had simply prepared a loan document from Freed Red Sky to Freed 4300 for $5,000, that's not a distribution. It's just a loan. And that's really what was happening here. That's what they used to do. If I may, not to cut you off, but I want to cut you off, you raise this argument at page 28 of your brief and you end it at page 29 with no citations to authority. So if you'd please stick with what you started with, which is about the contemnor. If you're going to argue about manifest weight up here without arguing it in your brief, and you mentioned your brief, so I'm not concluding it's forfeiture, but I don't want to hear a lot of details. But here's what this, no, we're not here for five days. So get back to the contemnor. I'm sorry. It's all right. I'm not going to interrupt you. I'm just saying this is how I talk. Let's get to the contemnor. It's a really interesting issue on the contemnor. I think I've said it, Your Honor. I don't have anything really to add. I think the case is cited, the two cases cited by opposing counsel. One is in New York. It should take no leave of that. But it's well written. And there are no cases, as you say, in Illinois. You have the hot dog case, Milkovich, the divorce case. And there are some other cases cited by neither party, but just black letter law, that anybody would know the principles involved, essentially, that on these issues of appointing receivers, the beginning of a citation, it's wide open. Fishing expeditions are allowed in Illinois. They determine assets. And going back to the very beginning of this case, I think the problem with the case is that your client owes, as I've said, to no fault of his own, as far as I can tell. He's not a shyster or a sharpie guy. He owes $107 million. And since the judgment was entered against him, he's paid $7,000 of it. And I think he's got more, I don't know. I think he's got more assets than me. I don't know. The actual, there have been 69 charging orders, 69 orders of foreclosure. His home has been put up for sale. There have been assets in a bankruptcy worth a million dollars. Those have been given to the bank. So there are other assets that have been given to the bank. But the reason, I guess if we get back to that, the reason there's no cases in support of the other party's position is because it flies in the face of Illinois law. It flies in the face of law of the United States. That's why there's nothing in support of it.  You have time for reply. Thank you, Judge. Mr. Anderson. Good morning, Your Honor. John Anderson for Bank of America. I think the most important thing to consider first in this case is the standard of review. First, on appointment of a receiver, it's an abuse of discretion. For contempt, it's also abuse of discretion. For the finding of dissipation, it's a manifest way to the evidence. And under the Taggart case, which is cited in the briefs, it's clearly within the discretion of the court to fashion an appropriate remedy when it finds contempt. The standards here are very difficult for an appellant. It has to be no reasonable person would either reach the conclusion on dissipation or find that there was contempt here or find that the remedies were improper by the court. Against those standards, we believe that the appellants have an almost impossible position here. The evidence was overwhelming before the hearing even began that $400,000 had been spent, transferred, dissipated by Freedom DDL on the papers that were submitted to the court. $245,000. This was after the service of the citation. This was after the service of the citation, Your Honor. Citation is an effective stay, isn't it? It's an automatic injunction. Continue. What happened is the citation was served on January 3rd. On January 21st, a quarter of a million dollars went out of Mr. Freed's Deutsche Bank account. It didn't go to Bank of America. It went to another lender. Now, they say that that transaction was put in place before January 3rd, but the transfer occurred on January 21st. That was admitted before the hearing even began. Also admitted were two affidavits submitted by the controllers for Joseph Freed Associates, Ms. Bazan and Ms. Walters, where they admitted that $193,000 was in DDL's account at Harris Bank and was no longer there. And at the time of the hearing, actually before the hearing began, we noted to the court that if you took all the bank accounts for Freed and DDL and you totaled up all the money that had gone in there that was no longer there, it was clear that almost a million dollars had been dissipated. This is before we even get to the book entries. And on the book entries, the evidence there was clear, too. The people who made them both submitted affidavits stating that they were made in order to properly account for the movement of funds. So the bottom line is that on the dissipation of monies, there clearly was overwhelming evidence. The counsel also said that the money was used to preserve the entities. When a citation is served... Well, again, I just pointed out, he only has a two-page argument on that and no case cited. I don't want to... I won't let him argue about it. I won't let you argue about it. No, I agree with you, Your Honor. So let's get back to what case can you cite? What's your best case for the proposition that the circuit court was allowed, within its broad discretion in this area, to appoint a receiver for the purpose of investigating unknown assets, as opposed to every other receiver case cited, which says you appoint receivers to protect assets. Known assets, you appoint a receiver, hold on to that asset. Like in the 69 LLCs, they know about that, you have a receiver for that. Again, not conceding anything for the next case down the road, which I know we'll have. Well, I think the most important case to begin with is Taggart. There's a discretion of the trial court to fashion appropriate remedies when there's been a contempt. And then we already have established that 2-718 of the garnishment sections is incorporated into 214-02. There's no question. And it's a very, very broad authority for the court. The court, when necessary to further the purposes and provisions of Part 7, may compel the judgment debtor to do or to refrain from doing any specific act or deed. And then Part 2 of the statute, or the court may appoint a receiver to collect any indebtedness or to take possession, sell, or otherwise dispose of any other property and enter all orders in regard thereto which are necessary and equitable between the parties. So between the case law saying that the court has broad discretion to fashion remedies and Section 2-718, the court has extremely broad authority to remedy the situation. And think about what the position the trial court was in here when this matter came before it. The citations are the real method in Illinois for collection of a judgment. It's standard procedure. They've been in place for years. What had happened here? Citations were served January 3rd. In the next five months, almost $5 million was dissipated. It comes before the court. She has an injunction in place. And for five months, an obviously sophisticated debtor who had numerous attorneys and experience in financial matters had let this go on for five months. What could the court do to stop this and have the statutory system work here? The statute expressly allowed for appointment of a receiver, and that is to collect and take possession of any assets. Mr. Anderson, after the citation to discover assets was served, your opponent argues that some of the money that you're complaining about having been dissipated really belonged to subsidiary and other corporate entities, albeit they were all held at the same time. Was there any discussion in the citation period when you're opposing these people or trying to find out what the money is, where the money is? Was there any inkling that this money that they are now saying belonged to other entities? Was that disclosed to you? It was disclosed in the affidavit where they said that the book entries show, quote, in order to properly account for the movement of funds. In other words, they put book entries where this money should actually be. There were transfers noted in a little charter, page 10 of our brief, where they showed the money flowing, but then the book entries show it going either through DDL or free. And they produced, I think it's appendix B to our brief, what they called check registers. And the check registers are in five pages a summary of all the money transactions that were, quote, booked to free and DDL. In other words, money that was booked as properly belonging to them. And so that's why the trial court concluded that there was almost $5 million in transfers here, because those check registers show that there was almost $5 million in money being transferred that was booked as belonging to free and DDL. And the people who were doing it said that the book entries showed who it belonged to. And so that's why the evidence was so overwhelming here. When the trial court was confronted with what do you do when an injunction has been ignored by an obviously sophisticated financier who's had counsel in court and all around him all the time. He has in-staff, in-house attorneys at his business that was doing these book entries. What can you do? Well, the statute expressly allows what she did do. Appointment of a receiver to collect and take possession of his assets. Of those assets? Which assets? Whatever assets he may have. Now, they made the argument here that the assets were always just used to protect and preserve the value of all these assets. No, that's not in the LLCs. We don't have the LLC cases in front of us. So they're complaining in front of us today, the complaint, is that the contempt receivers, what they call them, of the person, is actually looking around for unknown assets, right? That's the complaint we have in front of us today. Can the trial court do what the trial court did here and appoint a contempt receiver without any assets assigned to him but to go find more assets? That is what the order orders, does it not? It orders what it orders, and it's consistent with 2718, and it's consistent with what a citation is in the first place. Any judgment creditor serving a citation is dependent upon the judgment debtor to come forward and make a full, clean, honest, and complete disclosure of their assets. Here the trial court saw someone who not only didn't do that but went out and transferred $5 million in direct violation of the injunctive provisions of the citation. Yes, I understand that. And that $5 million was transferred among these LLCs, were they not? And again, we don't have that in front of us. Nobody is contesting today whether or not the trial court can appoint a receiver to the 69 LLCs. The question is, can the trial court appoint a receiver to investigate unknown assets? The statute clearly says he's allowed to marshal assets. But there's also timeframes in this area of law, are there not? You have six months on these citations to figure these things out. So you can't go back years later and go, by the way, I want to keep you in court forever. The timeframes are strictly a function of the judgment debtor's cooperation. If a judgment debtor gets a citation on day one and comes in seven days later with a complete disclosure, it's over. But when the judgment debtor doesn't do that, when the judgment debtor goes out and does what's happened here for five to six months and then there's a long period with hearings waiting for the court to rule and issuance of an order, that's the normal judicial process. I would agree with that, Mr. Anderson. The difference being, though, they already have a receiver for the LLCs, is the answer after catching them in a bunch of lies. Let's assume for the sake of today's argument that Freed and DDL was actually contempt. And from the order, clearly the judge said they're hiding a ball, et cetera, and I'm aware of the motions in limit A and all that. That being so, can you cite a case where a court has ever appointed a receiver not to a specific asset but to investigate unknown assets and then notify the court, oh, I found these? Well, first of all, I don't believe they're unknown assets. We know that there was cash and disperse. Plus here the 3020 receiver is a receiver only to receive the distributions of LLCs and it's only here for LLCs in Illinois pursuant to Illinois section 3020. At the hearing before Judge Brennan, there was evidence that there was money from entities in Colorado, Missouri, Michigan, Ann Arbor, Washington, D.C. And the evidence wasn't that this money from all these entities was necessarily always going to preserve the value. There was evidence that it was going to pay attorney's fees for Mr. Freed in other matters. Right. But again, understanding for the sake of this argument, all of it's very bad and they're completely dead in the water and they should be held in contempt. We're looking at the remedy. The question before us today, what is a proper remedy upon doing that? One of the remedies is to lock up Mr. Freed. Now, that's clear. 277-H says, hey, if you want, lock him up. But is one of the remedies available to appoint a receiver to hunt down assets? Under 2718, absolutely. Hilkovich is the one case set in every- It's a hot dog stand case, right? And so they kind of know the assets. This guy owns two hot dog stands. They said, hey, Hilkovich owns two hot dog stands. I'm appointing a receiver. Go see those two hot dog stands. Get their books. That was the original Vienna case, I believe, Your Honor. Hilkovich is where a sequestrator is appointed because someone isn't paying maintenance in a divorce. I'm sure you're right. Right. And the case I would also cite- Let me cite you in that case about the hot dog stand. To the court is the Welding case, which is cited at page 5 of Appellant's reply brief. In the Welding case, it involved a supplementary proceeding and the judgment debtor didn't pay $500 every two weeks. The court ordered that the debtor be imprisoned for 30 days. And what happened is on appeal, the court upheld the finding of contempt and remanded the matter for a different, what do you want to call it, sanction for the contempt, namely that the party be incarcerated until they made the payments the court had ordered. And I think that case is really what the issue is here. Even if you find the receiver was somehow improper or the purge provision is improper, the contempt should be affirmed and at most could happen would be a remand with a direction, as in the Welding case, as to what the remedy should be for that finding of contempt. Well, again, Hilkovich, going back to it, and you're right, Prastis is the hot dog case cited, followed by Hilkovich, so I apologize. But sequestrators, which is what this was, are specifically mentioned in dissolution cases. And so the trial court, or the appellate court in Hilkovich said, Judge, they called the person, the appointed receiver, he meant sequestrator. That really doesn't change things. But, again, that was to known assets. It was absolutely to known assets. Well, here there are known assets outside Illinois, as I listed. And also there was the sense of if there's an income stream coming to these judgment debtors of $5 million in the first five months, and nothing has happened since then, it's not beyond the court's power under 2718 to say someone should look out, take charge of that money, and unlike the judgment debtors, apply it in accordance with the provisions of the citation injunction. And it makes perfect sense. It really does, Mr. Anderson. We're looking for cases. This will be the first case in the history of the United States where this is held to be okay. And I'm always afraid of that. I'm kind of a brave guy, sort of, and not get shot at or nothing. In terms of saying new things, I don't like it. We did cite at pages 38 to 39 of our brief a variety of cases from other states and other jurisdictions, federal and state, where a receiver has been appointed in situations like this to take charge. There's at least a half a dozen cases there. And although it may be something that there's not a sheaf of Illinois cases on, that's because the citation procedure. But the statute is clear, and that's what's really before this court. Is there any integrity to the citation procedure? Is a court justified in following a very clear and broadly based statute? And the answer to that has to be yes. Well, I think my concern is that it may go back to the whole idea of we have an adversary system of justice. And their position, to boil it down, is, well, it's the bank's job to find the money that my guy has and not the court-appointed receiver to go hunt down my guy for the dough. No, it's the judgment's debtor's position to comply with the citation and make a full and complete and prompt disclosure. That didn't happen here. And taken as true, he's failed to do it. Is the answer, then, for the court to appoint somebody to investigate? It is one answer that the court can fashion under 2718. The wording of the statute is very clear, very broad, and the trial court here followed it almost to the T. Thank you very much. Thank you, Your Honor. Very, very quickly, Mr. Bernstein, briefly, I should say. It will only be two minutes, I'm sure. You asked opposing counsel repeatedly to give you a case. He couldn't. He was out there for a fairly long time. Again, that's because he can't. It doesn't exist. When he cites to 2718, Your Honor, you're exactly right. That's a known asset. Receiver, under the garnishment statute, would hold and maintain a known asset. And, of course, he keeps coming back to that. But it's wrong. On its face, it's wrong. The statute says it's wrong. There's no cases. Mr. Bernstein, you haven't given us a case either in support of your position that I think is clear. Oh, I think we have, Your Honor. Pancotta, I think. No, that's not what's here. So I think the question for me is, is this the remedy? You know, I think it's clear that your clients did not disclose what they were supposed to. What is the court to do under those circumstances, other than what the court did in this case? Your Honor, I'm sorry. What else would the court do? Well, Your Honor, I'll tell you what could have occurred. Let's assume that 245 was a violation of the citation. The court could have ordered Mr. Freed to pay back the $245,000. That's a fairly common sanction in such cases. As far as the booking entries, again, we're not getting into the manifest weight of the evidence, but the court could have ordered DDL or JFA to go back and rebook the entries just as loans. Again, no money seeped out. It all stayed in. So instead of accounting for them as a distribution, account for them as loans. That's a lot of things for the court could and should have done. How about what the court did in this case, which is to appoint a receiver who would then be the portal through which all of this must pass so, therefore, the court wouldn't have to go back and do its own calculations and all of that. What about that as a remedy given the broad powers that the court has to appoint receivers? Well, again, the part I think we're getting that perhaps gets distracted from, this is for contempt. There has to be a purge. And if opposing counsel, the bank had moved under 214.02 for a receiver and citing 718, that's one thing. That's not what happened. This is only as a purge. If the court's order included something that would allow a purge, would that fix the problem? No. It actually does provide for a purge. But it gives all of the rights to this third party to have the keys to the cell. And that third party will do an investigation. It will sell assets. And once it has disposed of all of the assets and then it has decided that Mr. Freed and DDL have cooperated, then the purge occurs. That's right in the order. So it's impossible for Mr. Freed and DDL to have the keys to their own cell. It's impossible. It's been given to someone else. And out of this contempt, the entirety of all the assets must be liquidated in order to obtain a purge. That seems rather draconian to us. So I have nothing further. I think Your Honors fully understand everything. Don't bet on that. Thank you very much. Thank you for the fine arguments, the briefs. This case will be taken under advisement and this court will be adjourned.